# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IRMA MEDINA,<br><br>    Plaintiff,<br><br>    v.<br><br>RELIASTAR LIFE INSURANCE COMPANY,<br><br>    Defendant. | Case No. 1:26-cv-00102-KES-SAB<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS<br><br>(ECF No. 8)<br><br>**OBJECTIONS DUE WITHIN FOURTEEN DAYS** |

Pending before the Court is the motion to dismiss for failure to state a claim filed by Defendant ReliaStar Life Insurance Company.  The Court held a hearing on May 27, 2026.  Robert Rosati, Esq., appeared on behalf of Plaintiff.  Jason James, Esq., appeared on behalf of Defendant.  Having considered the moving papers and arguments by counsel, as well as the Court's file, the Court issues the following findings and recommendations recommending granting in part and denying in part Defendant's motion.

## I.

## BACKGROUND

Plaintiff Irma Medina ("Plaintiff") was formerly employed by Kaweah Health Care District as a Registered Nurse.  (ECF No. 1, ¶¶ 8-9.)  In that capacity she alleges she was a third-party beneficiary of the group Long Term Disability ("LTD") Policy issued by Defendant ReliaStar Life Insurance Company ("Defendant") to her employer.  (Id. at ¶¶ 5.A., 10, 11, 15.)

Plaintiff paid 79% of the premium post-tax for her LTD benefits.  (Id. at ¶ 16.)

In the course of Plaintiff's employment she alleges was exposed to COVID-19, developed "long COVID," and in conjunction with other conditions, became disabled from working.  (Id. at ¶¶ 5.A, 18.)  Plaintiff made a claim for LTD benefits from Defendant.  (Id. at ¶¶ 5.A, 19.)  Defendant approved payment of LTD benefits and paid those benefits for three years.  (Id. at ¶ 5.B.)  When Defendant initially approved Plaintiff's LTD benefits, Plaintiff states it instructed her to sign an "Agreement Concerning Benefits;" Plaintiff alleges this Agreement is null and void, was an improper attempt to amend the Policy, lacked consideration, and contained an illegal provision purporting to authorize Defendant to impose a constructive trust on Plaintiff's Social Security, Workers' Compensation and pension benefits.  (Id. at ¶¶ 20-22, 53, 64.C., 69.H.)

Plaintiff agrees that Defendant's decision to pay Medina LTD benefits for those three years is not at issue in this suit.  (Id. at ¶ 5.A.)  But after payment of benefits for three years, Plaintiff notes that the Policy's definition of "disabled" changes from the insured's incapacity to perform her usual occupation to the insured's incapacity to perform any occupation, which must be evaluated, "in light of [the employee's] age, education, training, experience, station in life, and physical and mental capacity . . ."  (Id. at ¶ 5.B., citing ECF No. 1-3, Monthly Income Disability Insurance Plan, p. 13/27.)  Plaintiff alleges Defendant engaged in a bad faith investigation of Plaintiff's LTD claim, after it paid Plaintiff three years of benefits, leading to Defendant's determination to terminate Plaintiff's LTD benefits by letter dated September 24, 2024.  (Id. at ¶ 5.B.)

Plaintiff's claim was assigned to Heather Chapman ("Chapman"), a Senior Case Manager.  Plaintiff believes Chapman is employed by Defendant's third-party administrator, Fullscope RMS.  (Id. at ¶ 5.C.)  In July 2024, Chapman requested a further review of Plaintiff's medical records, which records review were provided by Dr. Stewart Russell ("Dr. Russell").  (Id.)  Dr. Russell was asked "to review information to determine if [Plaintiff] remain[ed] impaired from performing a sedentary physical demand occupation."  (Id.)  Plaintiff alleges that Fullscope RMS knew that Dr. Russell's opinion would be "no" because Dr. Russell:

> has provided medical reviews for insurance companies for decades; has not treated a patient since 1987; has been contracted to provide medical record reviews for Fullscope RMS or its predecessor in interest, Disability RMS, since 2012; has earned at least hundreds of thousands or likely millions of dollars doing so; and testified in another claim that in his opinion most individuals, regardless of their medical conditions, are physically able to perform sedentary work because 'it is basically the same things as doing activities of daily living at home . . . it is not really any different than doing the things you would do around the house.'

(Id.)   Thus, Plaintiff alleges that a review of an insured's medical records by Dr. Russell "virtually guarantees a report which concludes that the insured can perform a sedentary occupation." (Id. at ¶¶ 5.C., 29, 30.)

As part of his records review, Dr. Russell reviewed Dr. Brian Jacks Psychiatry Agreed Medical Examination report, which was prepared as part of Plaintiff's Workers' Compensation claim. (Id. at ¶¶ 5.D., 27.)  Dr. Russell noted that Dr. Jacks had diagnosed Plaintiff with major depressive disorder, generalized anxiety disorder, and other conditions. (Id.)  But Dr. Russell did not assess Plaintiff's capacity to mentally perform work. (Id. at ¶ 5.D.)  Defendant then obtained an "any occupation" vocational assessment from Theresa Marques ("Marques"), who concluded that based on Dr. Russell's opinion that Plaintiff could perform several sedentary nursing occupations but also noted "if it is determined there are M[ental] & N[ervous] restrictions, an addendum may be indicated." (Id. at ¶¶ 5.D., 31.)  Nonetheless, Plaintiff asserts that Defendant did not assess Plaintiff's mental capacity to perform any of the sedentary nursing occupations identified by Marques. (Id. at ¶ 5.D.)

According to Plaintiff, Chapman relied upon Dr. Russell's and Marques' reports to recommend termination of Plaintiff's LTD benefits.  Plaintiff alleges that Chapman did not have final authority to make the decision to terminate Plaintiff's LTD benefits. (Id. at ¶ 5.E.)  Under her employer's practices, Chapman was required to and did submit her recommendation to terminate Plaintiff's LTD benefits to Stuart D. Curran ("Curran"). (Id.)  Curran approved Chapman's decision to terminate Plaintiff's LTD benefits, writing: "I reviewed Ms. Medina's claim file.  I agree with the determination she is not impaired from performing alternate sedentary occupations.  As such, she is no longer disabled and claim is closed with the benefits

3

to 10/1/24, under reservation of rights." (Id. at ¶¶ 5.E., 32.)  With Dr. Russell's and Marques' reports and Curran's approval, Chapman then sent a letter dated September 24, 2024, to Plaintiff, terminating Plaintiff's LTD benefits.  (Id. at ¶¶ 5.F., 33.)

Without LTD benefits Plaintiff feared she and her family would not be able to pay their routine expenses.  (Id. at ¶ 5.G.)  Plaintiff therefore alleges she sought financial advice from an independent debt management service and also borrowed money to pay bills.  (Id. at ¶¶ 5.G., 34.) Plaintiff retained counsel to request a review of Defendant's decision terminating her LTD benefits, as she was invited to do by Chapman's September 24, 2024 letter.  (Id. at ¶¶ 5.I., 35.) Plaintiff's counsel submitted a comprehensive request for review to Defendant explaining that the termination of Plaintiff's LTD benefits was without merit and in bad faith, explaining, in part, Dr. Russell's alleged bias and the invalidity of his opinions.  (Id. at ¶¶ 5.I., 40, 41.) Plaintiff's counsel also explained that Plaintiff was incapable of working as a Registered Nurse. (Id.)

In response to Plaintiff's request for review, Defendant retroactively reinstated Plaintiff's LTD benefits based primarily, according to Plaintiff, on Plaintiff's mental illness conditions, while asserting that such benefits are limited to 24 additional months.  (Id. at ¶¶ 5.I., 45.) Defendant based that decision on a different medical reviewer's report (identified only as "Dr. Wesley J., M.D.") who "concluded that it is reasonable that [Plaintiff] has remained precluded from sustained work activity due to her somatic symptoms disorder, anxiety and depression." (Id. at ¶ 45.A.)

Plaintiff, through her attorney, requested that Defendant compensate her for its bad faith conduct.  (Id. at ¶ 40.F., 47.F., 50.B.)  Although Defendant paid Plaintiff past due monthly benefits with interest, (Id. at ¶¶ 46, 48, 49), Plaintiff alleges Defendant nonetheless breached the parties' contract, breached the implied covenant of good faith and fair dealing, and acted in bad faith.  (Id. at ¶¶ 59, 60.)  Defendant has refused to:

> (a) compensate Medina for the legal fees she incurred mitigating her damages; (b) compensate Medina for the emotional distress it caused her by wrongfully and in bad faith terminating her LTD benefits; (c) acknowledge that the 24 month mental illness benefit limitation in The Policy is void because it is not conspicuous, plain

> and clear and it is otherwise ambiguous and as properly construed does not apply to Medina's claim and that therefore Medina is potentially entitled to LTD benefits beyond an additional 24 months, that is potentially until she is age 67, issues raised in Medina's counsel's request for review of the termination of Medina's LTD benefits and subsequent letters; or (d) remedy its other fraudulent, bad faith practices.

(Id. at ¶ 5.J.)

Subsequent to Defendant's termination by letter dated September 24, 2024, of Plaintiff's LTD benefits, Plaintiff was retroactively awarded (and was subsequently paid) Social Security Disability (SSDI) benefits and her minor son was separately retroactively awarded (and Plaintiff was subsequently paid as her son's representative payee), Dependent SSDI benefits.  (Id. at ¶¶ 5.R, 37, 38.)  Those payments created retroactive overpayments of Plaintiff's LTD benefits, which Plaintiff alleges Defendant fraudulently and in bad faith attempted to collect by harassing and threatening Plaintiff with fraudulent, dishonest, and illegal collection demands; Defendant allegedly sought to enforce an illegal, void "Agreement Concerning Benefits" and demanded immediate repayment of Plaintiff's overpayment from Plaintiff in bad faith.  (Id. at ¶¶ 5.K., 39, 51, 52, 53, 54, 55.)

As a result of Defendant's alleged breach of the Policy, Plaintiff asserts she has suffered damages.  (Id. at ¶ 61.)  Specifically, Plaintiff alleges that Defendant, due to its breach of the Policy, owes Plaintiff attorney's fees Plaintiff has paid to date in the amount of $6,607.36, plus certain attorney's fees she will owe in the future, which attorney's fees constitute expenses Plaintiff incurred mitigating her damages caused by Defendant's improper termination of her LTD benefits and thus breach of the contract.  (Id. at ¶ 61.A.)  Plaintiff also alleges Defendant breached the contract because the "Agreement Concerning Benefits" is null and void, (Id. at ¶¶ 22, 59), and that Defendant also misinterpreted and misapplied the policy.  (Id. at ¶¶ 60, 63, 65.)  Plaintiff alleges that the Policy's 24-month mental illness benefits limitation does not apply to her claim because: (1) it is not clear, plain, and conspicuous; (2) is also ambiguous and, properly construed, does not apply to Plaintiff's claim; and (3) the Policy's definition of Disability due to "any occupation" requires consideration of Plaintiff's capacity to engage with reasonable continuity to any occupation she could reasonably be expected to perform

satisfactorily in light of her age, education, training, experience, station in life, and physical and mental capacity. (Id. at ¶ 14.)

In her second claim for relief for insurance bad faith, Plaintiff alleges that Defendant knowingly and deliberately failed to conduct a thorough, fair and objective investigation, (Id. at ¶ 70), should have obtained a medical review from an independent, unbiased doctor, (Id. at ¶ 71.A.), should have evaluated Plaintiff's capacity to both physically and mentally perform other occupation, (Id. at ¶ 71.B.), should not have relied upon the void "mental illness" limitation, (Id. at ¶ 71.D.), should have properly construed and applied the policy's "any occupation" definition of disabled by considering Plaintiff's physical and mental capacity to perform other, (Id. at ¶¶ 41, 71.D.), and improperly relied upon the Agreement Concerning Benefits, (Id. at ¶ 71.F.), thus improperly attempting to collect the overpayment, (Id. at ¶ 73), causing Plaintiff emotional and mental distress because she was unable to pay routine expenses, was forced to borrow money and was harassed by Defendant's threats to again terminate her benefits and its false, illegal collection action. (Id. at ¶ 76.) Plaintiff also seeks punitive damages. (Id. at ¶¶ 76-80.)

On January 7, 2026, Plaintiff commenced this action. (ECF No. 1.) Plaintiff brings two causes of action: 1) breach of contract with declaratory relief and 2) insurance bad faith . (Id. at pp. 19-24.) On March 10, 2026, Defendant filed the instant motion to dismiss. (ECF No. 8.) The assigned District Judge referred the motion to the undersigned. (ECF No. 12.) The motion was fully briefed (ECF Nos. 10, 11), and the Court heard argument on May 27, 2026. (ECF No. 14.)

## II.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss on the grounds that a complaint "fail[s] to state a claim upon which relief can be granted." A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). In deciding a motion to dismiss, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving

party." Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). The pleading standard under Rule 8 does not require "'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). In assessing the sufficiency of a complaint, all well-pleaded factual allegations must be accepted as true. Id. at 678. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. To avoid a dismissal under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.

In deciding whether a complaint states a claim, the Ninth Circuit has discussed that two principles apply. First, to be entitled to the presumption of truth the allegations in the complaint "may not simply recite the elements of a cause of action but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011). Second, so that it is not unfair to require the defendant to be subjected to the expenses associated with discovery and continued litigation, the factual allegations of the complaint, which are taken as true, must plausibly suggest an entitlement to relief. Id. "Dismissal is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." Navarro, 250 F.3d at 732, citing Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1988).

**III.**

**DISCUSSION**

Broadly speaking, Defendant makes three arguments. First, Defendant argues that Plaintiff's breach of contract claim fails because Plaintiff has not, and cannot, allege cognizable damages. (ECF No. 8, pp. 3-4.) Second, Defendant contends that Plaintiff seeking declaratory relief cannot save her case, and in any event, such relief fails as a matter of law. (Id. at pp. 4-9.) Finally, Defendant posits that Plaintiff's tortious bad faith claim must also fail as a matter of law. (Id. at pp. 9-10.) Plaintiff opposes, generally taking each argument in turn (and allowing for narrowing of certain issues). (ECF No. 10.)

In the Court's view, the crux of this case boils down to two questions: First, whether attorney's fees, as alleged by Plaintiff in her complaint, may support a breach of contract claim. Second, whether a claim of bad faith may lie, as alleged here, notwithstanding that the related contractual claim has been satisfied.  On the first question, the Court agrees with Defendant.  However, on the second question, the Court agrees with Plaintiff.

**A.   Breach of Contract: Damages**

Under California law, "the elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." Oasis West Realty, LLC v. Goldman, 51 Cal. 4th 811, 821, 250 P.3d 1115 (Cal. 2011).

The question before the Court is whether in a state disability insurance action, are attorney's fees cognizable "damages" sufficient to state claim for a breach of contract.  The Court concludes the answer is no.

"Under California law, a breach of contract claim requires a showing of appreciable and actual damage." Aguilera v. Pirelli Armstrong Tire Corp., 223 F.3d 1010, 1015 (9th Cir. 2000). Though a party who has been injured by a breach of contract may generally elect to choose what remedy to seek, this understanding comes with nuance.  In a chestnut case on election of remedies, the California Supreme Court stated:

> It is well settled in this state that one who has been injured by a breach of contract has an election to pursue any of three remedies, to wit: He may treat the contract as rescinded and may recover upon a quantum meruit so far as he has performed; or he may keep the contract alive, for the benefit of both parties, being at all times ready and able to perform; or, third, he may treat the repudiation as putting an end to the contract for all purposes of performance, and sue for the profits he would have realized if he had not been prevented from performing.

Alder v. Drudis, 30 Cal. 2d 372, 381-82, 182 P.2d 195 (1947).

That said, "if a plaintiff has fully performed a contract, damages for breach is often the only available remedy." Chodos v. West Publishing Co., 292 F.3d 992, 1001 (9th Cir. 2002), citing Oliver v. Campbell, 43 Cal. 2d 298, 306, 273 P.2d 15 (1954).  In Oliver, the California Supreme Court recognized an exception to this general rule:

> The remedy of restitution in money is not available to one who has fully performed his part of a contract, if the only part of the agreed exchange for such performance that has not been rendered by the defendant is a sum of money constituting a liquidated debt; but full performance does not make restitution unavailable if any part of the consideration due from the defendant in return is something other than a liquidated debt.

Oliver, 43 Cal. 2d at 306.

Notwithstanding the foregoing foray into state contractual remedies, here state statutes are implicated because this matter is one involving disability insurance. Under California Insurance Code § 10111, "[i]n life or disability insurance, the only measure of liability and damage is the sum or sums payable in the manner and at the times as provided in the policy to the person entitled thereto."[1]

Here, Plaintiff seeks to use attorney's fees incurred in addressing her denial and appeal of her disability insurance benefits as damages to support a contract claim. Yet, this appears to be in contravention with the California Insurance Code, which states that in a disability insurance cases, "the *only* measure of liability and damage is the sum or sums payable in the matter and at the times as provided in the policy to the person entitled thereto." Cal. Ins. Code § 10111 (emphasis added). In other words, it does not appear that attorney's fees may give rise to cognizable damages in disability insurance cases.

Plaintiff offers two rebuttals to this. First, Plaintiff cites to Howard v. American National Fire Ins. Co., 187 Cal. App. 4th 498 (Cal. Ct. App. 2010), as support that the California Court of Appeal has adopted a reasoning separate from above. Second, Plaintiff urges this Court, sitting in diversity, to "harmonize" the California Insurance Code in a way that would support Plaintiff's argument. Neither position is persuasive.

To understand the import of Howard, it is imperative to know the underlying posture of that case. An underlying action in Howard involved a young man who was molested as a child

---

[1] It must be noted that California enacted Code of Civil Procedure § 1021 to codify the "American rule" that, ordinarily, "each party to litigation must bear the expense of its own attorney fees." Santisas v. Goodin, 17 Cal. 4th 599, 607 n.4 (Cal. 1998), citing Cal. Code Civ. Proc. § 1021 ("Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties; but parties to actions or proceedings are entitled to their costs, as hereinafter provided.").

by a Catholic priest who thereafter sued the bishop who had retained the priest in the diocese. Id. at 507. Following a jury verdict against the bishop for negligent retention, the bishop entered into a settlement with the young man while the case was on appeal. Id. In addition, the bishop agreed to join Howard in an action against the bishop's insurers to recover on the judgment and for bad faith failure to defend, settle, and indemnify the molestation case. Id. In the insurance action that followed, the court, following a bench trial, found that American National, an insurance company, was liable for breach of contract and bad faith failure to defend, settle, and indemnify. Id. The court awarded nearly three million in damages. Id. American National appealed both the judgment and the legal costs awarded to the plaintiffs in a post-judgment order. Id.

As relevant here, the Plaintiff has directed the Court to the section in the Howard opinion involving the bad faith claim. (ECF No. 10, p. 9-10.) Indeed, the section begins with the observation that, "[i]f 'an insurer denies coverage *in bad faith*, the insured can recover attorney fees in an action to recover the policy benefits.'" Id. at 533 (emphasis added), quoting Essex Ins. Co. v. Five Star Dye House, Inc., 38 Cal. 4th 1252, 1257, 137 P.3d 192 (Cal. 2006). Indeed, the next sentence states, "[a]n insurer's *tortious breach* of the *implied covenant of good faith and fair dealing* makes the insurer liable for all damages that are a proximate result of that breach." Id. (emphasis added), citing Brandt v. Superior Court, 37 Cal. 3d at 813, 817, 693 P.2d 796 (Cal. 1985). Nowhere in this section does the California Court of Appeal endorse that in a *contract* case, no less involving disability insurance, that attorney's fees may serve as damages. Thus, Plaintiff has overstated Howard. Plaintiff's argument at the hearing was not otherwise persuasive.

Plaintiff resists this understanding of the law and argues that Defendant's lead case demonstrating this principle, Bruce v. Hartford Life and Accident Insurance Company, No. 2:17-cv-02201-MCE-KJN, 2019 WL 6211364 (E.D. Cal. Nov. 21, 2019), was wrongly decided and "inconsistent" with the California Insurance Code. Plaintiff's first contention is that Burce wrongly applied Howard; however, as explained above, the Court found Plaintiff's reading of Howard to be unpersuasive. Moreover, Bruce is hardly the only court to have come down this

way regarding attorney's fees. See, e.g., National Life Insurance Company v. Korsh, No. 24-cv-1263-MMA-VET, 2025 WL 474915, at *4 (S.D. Cal. Feb. 12, 2025); Cousens v. Transamerica Life Insurance Company, No. 2:20-cv-10003-SPG-JPR, 2024 WL 693800, at *3 (C.D. Cal. Jan. 19, 2024); Boynton v. Reliance Standard Life Insurance Company, No. 14-cv-486-L(JMA), 2015 WL 11570935, at *3 (S.D. Cal. Jan. 29, 2015); see also Trapana v. Prudential Ins. Co. of America, No. D038617, 2002 WL 505764 (Cal. Super. Ct. Apr. 4, 2002), citing Brandt and Patterson v. Insurance Co. of North America, 6 Cal. App. 3d 310, 317-18, 85 Cal. Rptr. 665 (Cal. Ct. App. 1970) ("'It is now settled that an insured is not entitled to an award of attorneys' fees incurred in prosecuting a separate action against an insurer to enforce' a contractual right."). Thus, it appears the weight of persuasive authority is against Plaintiff on this measure.

Plaintiff's offered precedent on mitigation of damages for her contract claim is also not persuasive. In particular, Brandon & Tibbs v. George Kevorkian Accountancy, 226 Cal. App. 3d 442, 460, 277 Cal. Rptr. 40 (Cal. Ct. App. 1990), was a contract case involving a joint venture's operation and development of an accounting practice in Fresno and Madera Counties. Id. at 453. Thus, as should be apparent, this contract did not invoke California Insurance Code § 10111. Therefore, the court's discussion on the mitigation of damages is unhelpful to Plaintiff's position. Further afield is Kleinclaus v. Marin Realty Co., 94 Cal. App. 2d 733, 211 P.2d 582 (Cal. Ct. App. 1949), which involved mitigation of costs in a tort context (and likewise did not involve a contract subject to § 10111). Id. at 739. These cases have not connected the dots for the Court between mitigation of damages and allowable damages in a disability insurance case.

Plaintiff's final gambit on this issue is one of legislative history and statutory interpretation. (ECF No. 10, p. 11.) According to Plaintiff, California Insurance Code § 10111, the statute directly applicable here, must be read in conjunction with Insurance Code § 10111.2(d). For clarity, the Court juxtaposes the two sections below:

> In life or disability insurance, the only measure of liability and damage is the sum or sums payable in the manner and at the times as provided in the policy to the person entitled thereto.

Cal. Ins. Code § 10111.

> Nothing in this section is intended to restrict any other remedies

available to an insured by statute or any other law.

Cal. Ins. Code § 10111.2(d).

The Court finds the two statutes are clear on their face and do not create ambiguity that requires harmonization. In particular, § 10111.2(d) falls under a section of the Insurance Code regarding "time for payment of benefits; exceptions; interest." Section 10111.2 thus generally provides for interest on disability benefits when they are not paid within 30 days of the insurer receiving all the information needed to determine liability on the claim. Following the procedures laid out in §§ 10111.2(a)-(c), § 10111.2(d) simply notes that nothing in '*this* section' is intended to restrict other remedies available to an insured by statute or state law. Thus, § 10111.2(d) clearly applies to only § 10111.2 generally. Plaintiff's expansive reading is unsupported and ultimately unpersuasive.

Accordingly, the Court finds that Plaintiff has not sufficiently articulated to the Court why it should engage in anything other than a plain reading of § 10111, which clearly states that the "*only* measure of liability and damage is the sum or sums payable in the manner and at the times as provided in the policy to the person entitled thereto." Cal. Ins. Code § 10111 (emphasis added). Thus, the Court declines to discuss heavily Plaintiff's legislative history, which was provided to the Court as only an attachment with no argument or pin cites to the history in the opposition; Plaintiff simply states, "[the legislative history] further demonstrates the plain intent that Section 10111.2 alters Section 10111 and that Section 10111.2 is not the exclusive remedy and does not restrict other remedies - - such as recovering costs of mitigating damages." (ECF No. 10, p. 12.)[2] In any event, a review of the attached history demonstrates only that the purpose

---

[2] Plaintiff has moved for judicial notice of certain legislative history regarding Cal. Ins. Code § 1011.2. (ECF No. 10-1.) "As a general rule, 'a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion.'" Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001), quoting Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994). Doing so would convert a motion to dismiss into a motion for summary judgment. Fed. R. Civ. P. 12(d). However, a court may take judicial notice of a fact not subject to reasonable dispute, either because the fact is generally known within the territorial jurisdiction of the trial court or because the fact is capable of accurate and ready determination from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b). Courts may also take judicial notice of undisputed matters of public record, Lee, 250 F.3d at 689, including documents filed in federal or state courts. Harris v. Cnty. of Orange, 682 F.3d 1126, 1132 (9th Cir. 2012). The Court has reviewed Plaintiff's request for judicial notice and the legislative history; further, Defendant has not objected. Accordingly, the Court grants Plaintiff's request and takes judicial notice of the legislative history provided. (ECF Nos. 10-1, 10-2.)

12

of Section 10111.2 was to provide for interest payments when certain criteria are met. (ECF No. 10-2.) The Court observes that there was no discussion in the legislative history regarding attorney's fees or costs to mitigate damages.

Plaintiff's citation to the legislative history in her declaration in support of judicial notice does not move the needle. (ECF No. 10-2, ¶ 5.D.) In the Senate Committee on Insurance, it was noted that § 10111.2 (known then as SB 1413) "would require the payment of disability income benefits within 30 working days after the insurer has received all information needed to determine liability for the claim, with interest on the payment beginning the 31st day." (ECF No. 10-2, p. 5.) Under a comments section, it was further noted that "[t]he Consumer Attorneys of California requested an amendment to clarify that the bill is not intended to restrict any other remedies that an insured has against his or her insurance company. The May 4, 1998, version of the bill contains this amendment." (Id. at p. 6.) This legislative history does not support a reading that the Legislature envisioned a broad *expansion* of remedies in disability insurance cases; indeed, § 10111.2(d) carefully states that adding interest as a remedy, under certain circumstances, is not intended to *restrict* "any other remedies available" to an insured by statute or any other law. Thus, in an appropriate case, under § 10111, and § 10111.2, an injured party could receive both the policy benefits *and* interest. If anything, this legislative history lines up with the Court's previous commonsense reading of § 10111.2(d).

For the foregoing reasons, the Court finds that attorney's fees, under California law, are not cognizable as "damages" in a contract claim involving disability insurance. Therefore, the Court will recommend granting this aspect of Defendant's motion to dismiss.

## B. Declaratory Relief[3]

Because the Court has found that Plaintiff has not stated a claim for her contract cause of action, any declaratory relief that would flow from that claim would be impossible.

---

[3] In support of a certain aspect of Plaintiff's request for declaratory relief, Defendant has moved for judicial notice of a letter dated August 8, 2025, from attorney Jason James to Plaintiff's counsel regarding that, "Defendant does not contend the Group Policy is governed by the Employee Retirement Income Security Act of 1974 ("ERISA")." (ECF No. 8-2, ¶ 1.) The Court has reviewed Defendant's request and the letter; further, Plaintiff has not objected to the request. Accordingly, the Court grants Defendant's request for judicial notice of the August 8, 2025 letter. (ECF No. 8-2.)

"The Declaratory Judgment Act does not provide a cause of action when a party . . . lacks a cause of action under a separate statute and seeks to use the Act to obtain affirmative relief." City of Reno v. Netflix, 52 F.4th 874, 879 (9th Cir. 2022) (per curiam). The availability of relief under the Declaratory Judgment Act "presupposes the existence of a judicially remediable right." Schilling v. Rogers, 363 U.S. 666, 677 (1960).

Thus, this issue appears to be moot in light of the findings above.

**C.    Bad Faith**

The parties dispute whether a bad faith claim may nonetheless lie even where a contract claim has essentially been resolved. As with most aspects of the law, it depends. Ultimately, the Court finds that Plaintiff has stated a claim of bad faith, notwithstanding that her breach of contract claim fails.

Under California law, all insurance contracts contain an implied covenant of good faith and fair dealing. Egan v. Mutual of Omaha Ins. Co., 24 Cal. 3d 809, 818, 620 P.2d 141 (1979). To be sure, "compensatory damages based on a contractual cause of action for breach of an implied covenant of good faith in a disability insurance policy cannot include a sum for future benefits is correct." Pistorius v. Prudential Insurance Co., 123 Cal. App. 3d 541, 551, 176 Cal. Rptr. 660 (Cal. Ct. App. 1981), citing Erreca v. West States Life Ins. Co., 19 Cal. 2d 388, 402, 121 P.2d 689 (Cal. 1942). However, "where the damages are based on a tort theory, the situation is different." Id. In Egan, the Supreme Court of California expressly condoned tort damages in such a context, noting that "the jury may include in the compensatory damage award future policy benefits that they reasonably conclude, after examination of the policy's provisions and other evidence, the policy holder would have been entitled to receive had the contract been honored by the insurer." Egan, 24 Cal. 3d at 824.

The primary test for tort liability for the breach of the implied covenant of good faith and fair dealing (i.e., bad faith) is "whether the insurer withheld payment of an insured's claim unreasonably and in bad faith." Love v. Fire Ins. Exch., 221 Cal. App. 3d 1136, 1151 (1990); see Frommoethelydo v. Fire Ins. Exchange, 42 Cal. 3d 208, 214-215 (1986). Therefore, there are two requirements to establish a breach of the covenant: "(1) benefits due under the policy must

14

have been withheld; and (2) the reason for withholding benefits must have been unreasonable or without proper cause." Love, 221 Cal. App. 3d at 1151.

In Waller v. Truck Ins. Exchange, Inc., the California Supreme Court explained that, when benefits are due an insured, "delayed payment based on inadequate or tardy investigations, oppressive conduct by claims adjusters seeking to reduce the amounts legitimately payable and numerous other tactics may breach the implied covenant because" they frustrate the insured's right to receive the benefits of the contract in "prompt compensation for losses." 11 Cal. 4th 1, 36, 900 P.2d 619 (Cal. 1995), quoting Love, 221 Cal. App. 3d at 1153. Thus, as a general rule, there can be no breach of the implied covenant of good faith and fair dealing if no benefits are due under the policy: "[T]he covenant is based on the contractual relationship between the insured and the insurer . . . . Absent that contractual right [to policy benefits], the implied covenant has nothing upon which to act as a supplement, and 'should not be endowed with an existence independent of its contractual underpinnings.'" Brehm v. 21st Century Insurance Company, 166 Cal. App. 4th 1225, 1235, 83 Cal. Rptr. 3d 410 (Cal. Ct. App. 2008), quoting Waller, 11 Cal. 4th at 36.

However, that is not the end of the story. For example, "breach of a specific provision of the contract is not a necessary prerequisite to a claim for breach of the implied covenant of good faith and fair dealing . . . . [E]ven an insurer that pays the full limits of its policy may be liable for breach of the implied covenant if improper claims handling causes detriment to the insured." Schwartz v. State Farm Fire & Casualty Co., 88 Cal. App. 4th 1329, 1339, 106 Cal. Rptr. 2d 523 (Cal. Ct. App. 2001). Thus, "[a] delay in payment of benefits due under an insurance policy gives rise to tort liability only if the insured can establish the delay was unreasonable." Brehm, 166 Cal. App. 4th at 1237, citing Wilson, 42 Cal. 4th at 723.

The Court finds that Plaintiff has sufficiently alleged a bad faith claim. As alleged in the complaint, Defendant was obligated to pay benefits monthly. (See ECF No. 1-2, p. 46, "Payment of Claims.") Plaintiff has alleged that Defendant breached the Policy by not doing so beginning on September 24, 2024. Plaintiff has also offered allegations in support of what made this failure to pay unreasonable. Specifically, Plaintiff has alleged that benefits were not paid for

15

approximately seven months.  In addition, she alleges a scheme whereby Defendant utilized a doctor who would almost certainly find Plaintiff, and similar patients, not disabled (*i.e.*, capable of sedentary work).  Relatedly, Plaintiff has alleged an improper or inadequate investigation of her case.  Finally, regarding this claim, Plaintiff has alleged emotional and economic damages (*i.e.*, attorney's fees).  See Gourley v. State Farm Mut. Auto. Ins. Co., 53 Cal. 3d 121, 128, 822 P.2d 374 (Cal. 1991) (recognizing emotional damages in bad faith claims); Brandt, 37 Cal. 3d at 817 ("When an insurer's tortious conduct reasonably compels the insured to retain an attorney to obtain the benefits due under a policy, it follows that the insurer should be liable in a tort action for that expense.").

Defendant seemingly focuses only on the length of time at issue here, but even seven months may be dire for those living paycheck to paycheck.  Furthermore, Defendant offers no precedent that seven months is below some sort of threshold that the Court could find in its favor on a motion to dismiss.  Otherwise, Defendant has not persuasively argued that the complaint does not allege an unreasonable delay.  Defendant's only other argument is that Plaintiff received SSDI benefits in December 2024.  But the Court fails to see how that would absolve Defendant from any alleged bad faith in which it had engaged.  Moreover, at the hearing Plaintiff countered this assertion by noting that what she received in December 2024 was her SSDI award letter— not a payment.  Thus, this argument is not persuasive.

Turning to caselaw, Plaintiff has directed the Court to McCormick v. Sentinel Life Ins. Co., 153 Cal. App. 3d 1030, 1051, 200 Cal. Rptr. 732 (Cal. Ct. App. 1984), where the California Court of Appeal discussed that precedent "did not hold a finding of bad faith is precluded where an insurer delays paying benefits rather than formally denying them."  Id. at 1050.  Rather, the court explained that "a lengthy delay in resolving a claim for insurance benefits will have the identical consequence for the insured as an outright denial of benefits.  An insurance company cannot insulate itself from liability simply because rather than denying benefits outright it keeps a claims file on the shelf for months or years without ever formally denying it."  Id.  In other words, "an 'ultimate tender of benefits . . . does not defeat [a cause] of action for insurance bad faith or emotional distress.  Rather, it merely mitigates damages.'  If eventual payment of

16

benefits due under a policy will not cure an earlier bad faith breach, a fortiori, the mere fact the insurer never formally denies coverage will not cure such a breach." Id. at 1051. The Court finds McCormick persuasive.

For its part, Defendant first cites to Bruce. 2019 WL 6211364. However, the Court observes that Bruce relied upon the "genuine dispute" doctrine on a summary judgment posture and gave little analysis. Id. at *7; see also Jordan v. Allstate Ins. Co., 148 Cal. App. 4th 1062, 1073, 56 Cal. Rptr. 3d 312 (Cal. Ct. App. 2007). Therefore, Bruce is not persuasive on this point.

Next, Defendant cites to Behnke, which involved an owner of a condominium who sold his property to a buyer. Behnke v. State Farm General Ins. Co., 196 Cal. App. 4th 1443, 1147-48, 127 Cal. Rptr. 3d 372 (Cal. Ct. App. 2011). The buyer made a third-party claim regarding black mold against State Farm, who had issued a rental dwelling policy to the owner previously. Id. Later, the buyer sued the owner alleging that the owner had painted over the black mold. Id. at 1148. In a complicated series of events involving State Farm accepting the defense of the buyer, accepting the buyer's choice of counsel, then later disputing the attorney's fees as excessive, the buyer eventually sued State Farm for damages and the attorney's fees that remained between the buyer and his chosen law firm to defend him. Id. at 1467-68. The California Court of Appeal affirmed the trial court's grant of summary judgment in favor of State Farm, essentially finding that State Farm was not a party to the contract between Plaintiff and the law firm he had chosen to use. Id. Thus, because there was no contract claim between State Farm and the buyer, the buyer's claim for bad faith denial of insurance benefits failed as well. Id. at 1470. The Corut finds Behnke to be highly fact specific and ultimately does not support Defendant's position.

Likewise, Defendant's citation to Potovsky v. Lincon Benefit Life Company is unpersuasive. No. 23-4130, 2024 WL 5289187 (9th Cir. Jan. 7, 2025) (mem.) In Potovsky, the damages sought by the plaintiffs were expressly excluded from the insurance policy. Id. at * 3. The Ninth Circuit affirmed the district court's determination that the insurance company had not waived this provision. In other words, there was no denial of benefits because the contract did

17

not provide for the damages sought by the plaintiffs. Thus, the Court stated that the plaintiffs' bad faith claim could not prevail "without a predicate breach of contract." Id. In support of that proposition, the Court quoted Progressive W. Ins. Co. v. Superior Ct., 135 Cal. App. 4th 263, 278 (Cal. Ct. App. 2005) as follows: "[If] no benefits are withheld or delayed, there is no cause of action for the breach of the covenant of good faith and fair dealing." Therefore, it appears the Ninth Circuit was discussing the 'predicate breach of contract' issue in the case before it, not generally expounding on California contract law as a whole as Defendant seemingly suggests. This is confirmed by the fact that the Court issued this decision as a memorandum and even cited case law that only supports Plaintiff's bad faith claim here because she *does* allege an unreasonable delay of benefits due.

Finally, the Court agrees with Plaintiff that Defendant's remaining case law is cherry-picked in certain aspects while ignoring the facts here. For example, Defendant cites to Mony Life Ins. Co. v. Marzocchi, 857 F. Supp. 2d 993, 996 (E.D. Cal. 2012), as supporting that "where benefits are fully and promptly paid, there can be no action for bad faith." But the Court cannot say from the complaint that the benefits were "promptly paid." Again, the Court must accept the allegations in the complaint and views them in the light most favorable for the non-movant.

Next, Defendant cites to Maynard v. State Farm Mutual Auto Ins. Co., 499 F. Supp. 2d 1154, 1160 (C.D. Cal. 2007) for the proposition that "delay while the insurer seeks information and investigates the insured's claim" does not give rise to bad faith liability. Id., citing Blake v. Aetna Life Ins. Co., 99 Cal. App. 3d 901, 921, 160 Cal. Rptr. 528 (Cal Ct. App. 1979). However, without context, this is misleading. In Blake, the case Maynard relied upon, the insurance company "never denied the claim, but persisted in seeking information essential to a determination of its merits." Blake, 99 Cal. App. 3d at 922. Thus, the "delay" at issue in Blake was not delay of benefits following a denial, but a delay in assessing a claim. Id. Thus, the court in Blake held that the insurance company "satisfied both its obligation to the plaintiff to act fairly and in good faith and its obligation to other policy holders and to stockholders not to dissipate its reserves through the payment of meritless claims." Id. at 924. Therefore, Maynard is not persuasive.

18

Finally, Defendant points to <u>Love</u>, 221 Cal. App. 3d at 1151, in a section of the opinion where the court was discussing that the plaintiff had missed the statute of limitations in resubmitting their insurance claim, and therefore, the insurance company could not have been said to have been acting in bad faith. <u>Id.</u>  As with <u>Mony</u> and <u>Maynard</u>, <u>Love</u> is patently not persuasive to the facts here.

At the hearing, Defendant offered a distinction of the caselaw not discussed in its briefing—namely, it should be a distinguishing feature here that Plaintiff engaged in an internal appeal and won; she did not have to file a lawsuit to have her benefits reinstated.  Defendant offered no precedent for such a position.  In any event, it appears to be a distinction without a difference to the Court.  No caselaw seemingly suggests that an insurance company could evade a bad faith claim following an unreasonable denial of benefits simply because a plaintiff engages in an internal (and oftentimes required) appeal.  All that is required is that "(1) benefits due under the policy must have been withheld; and (2) the reason for withholding benefits must have been unreasonable or without proper cause."  <u>Love</u>, 221 Cal. App. 3d at 1151.

For the foregoing reasons, the Court will recommend denying this aspect of Defendant's motion.

**D.**     **Leave to Amend**

Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend shall be freely given when justice so requires.  Fed. R. Civ. P. 15(a)(2). "In the absence of . . . undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should . . . be 'freely given.'" <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962), quoting Fed. R. Civ. P. 15(a).  In other words, "[a]bsent prejudice, or a strong showing of any of the remaining <u>Foman</u> factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend." <u>Eminence Capital, LLC v. Aspeon, Inc.</u>, 316 F.3d 1048, 1052 (9th Cir. 2003).  The decision of whether to grant leave to amend is within the discretion of the district court. <u>Leadsinger, Inc. v. BMG Music Pub.</u>, 512 F.3d 522, 532 (9th Cir. 2008).

Given that California law is exceedingly clear that attorney's fees may not serve as damages in a disability insurance context, Cal. Ins. Code § 10111, the Court finds that leave to amend regarding Plaintiff's contract claim would be futile. Therefore, the Court will recommend granting Defendant's motion to dismiss as to Plaintiff's contract claim without leave to amend.

**V.**

**CONCLUSION AND RECOMMENDATION**

Based on the foregoing, IT IS HEREBY RECOMMENDED that Defendant's motion to dismiss (ECF No. 8) be GRANTED IN PART and DENIED IN PART as follows:

1. Defendant's motion to dismiss be granted as to Plaintiff's contract claim without leave to amend;

2. Defendant's motion to dismiss be denied as to Plaintiff's bad faith claim.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. **Within fourteen (14) days** of service of this recommendation, any party may file written objections to these findings and recommendations with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014), citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **June 2, 2026**

_____
STANLEY A. BOONE
United States Magistrate Judge

20